## Wilt License

*Norman L. Levin*, for Commonwealth.

*R. Lee Ziegler*, for appellant.

LEHMAN, P. J., March 5, 1960.—Williams L. Wilt, a resident of Yeagertown, Mifflin County, has appealed from the action, after hearing, of the Department of Revenue in suspending for a period of three months

his operating privileges under section 618(e) of The Vehicle Code of April 29, 1959, P. L. 58, by reason of having received notice of appellant's conviction in New Jersey of going through a red stop light. Wilt contends that said suspension imposes an extreme economic hardship on him and was unjustified by the facts and unwarranted in law.

After hearing de novo, the trial judge makes the following:

## Findings of Fact

1. Wilt has been a licensed operator in the State of Pennsylvania for a period of several years.

2. For the past three years, he has been operating a tractor-trailer combination owned by him and at the time of the alleged traffic violation had said equipment leased to Travelers Motor Freight, Wheeling, W. Va.

3. Wilt operates his equipment approximately 100,-000 miles per year.

4. On February 26, 1959, Wilt was arrested at Mountainside, N. J., on a charge of disrespecting a red stop light on a four-lane divided highway, to which charge he pleaded guilty and paid a fine and costs in the sum of $13.

5. Wilt was given a hearing on July 6, 1959, before a representative of the Secretary of Revenue following receipt of notice of his New Jersey conviction.

6. On August 5, 1959, Wilt received from the Bureau of Highway Safety of the Commonwealth "notification of withdrawal of motor vehicle privileges" for a period of three months.

7. On August 17, 1959, Wilt appealed from said order of suspension, and the matter was heard by us de novo.

8. Wilt was aware that the traffic light was about to change from amber to red but elected to proceed through said light when it was red by reason of the

fact that a tractor-trailer combination loaded with coal was following him less than 500 feet distant and was not reducing his speed.

9. Wilt admitted before us of having committed six prior motor vehicle violations and of having received two prior 15-day suspensions of his operator's license within the last three years. These offenses consisted primarily of reckless driving and speeding.

## *Discussion*

Wilt contends that he was fearful that the tractor-trailer following him would not stop in time, that had he not gone through the light he likely would have been hit by the oncoming equipment and that he observed he could go through the light in safety inasmuch as the other vehicles waiting for the light to change had not started. We are satisfied that suspension of Wilt's license was justified by the facts and warranted in law. Section 618(*e*) of The Vehicle Code of April 29, 1959, P. L. 58, became effective July 1, 1959. It is a verbatim reënactment of section 615(*e*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §192. Each of these sections specifically authorizes the Secretary of Revenue of the Commonwealth after a hearing before the Secretary or his representative to suspend the operator's license or learner's permit of any person licensed in this Commonwealth upon receiving notice of the conviction of such person in another State of an offense therein which, if committed in this Commonwealth, would be grounds for the suspension or revocation of the license of an operator.

In Kerns' Appeal, 51 D. & C. 136, section 615(*e*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, was cited as authority for the secretary's suspension of an operator's license, after hearing, where it appeared that the operator had been con-

victed in another State of operating his automobile at a speed in excess of the maximum prescribed by the laws of that State but within the limit fixed by Pennsylvania law. The court observed that the real purpose of the act under which petitioner's license was suspended was to control the licenses of those operators who do not obey the motor vehicle regulations on the public highways, whether they demonstrate their disregard, recklessness or unfitness in Pennsylvania or elsewhere.

Section 1028 of The Vehicle Code of April 29, 1959, makes it unlawful for an operator to disobey the directions of any properly placed traffic signal unless otherwise directed by a peace officer. This section further provides that when the light is yellow, traffic facing the signal shall stop before entering the intersection, but if such stop cannot be made in safety, a vehicle may be driven cautiously through the intersection, and when the light is red, traffic facing the signal shall stop before entering the intersection and remain standing until green is shown. Wilt testified on this appeal that he proceeded through the light after it had turned yellow and was yellow when he was last able to see the light in going through the intersection. Wilt contends that he paid his fine and costs because it would have cost him a day's wages to have contested the case in New Jersey.

The Secretary of Revenue of our Commonwealth properly accepted Wilt's New Jersey conviction as proof of his violation. A Pennsylvania court may not refuse to recognize a New Jersey conviction. Such conviction is res judicata in Pennsylvania: Kerns' Appeal, supra. Going through a red light is an offense in Pennsylvania as well as in New Jersey, and conviction thereof authorizes and justifies the Secretary of Revenue in suspending an operator's license: Section 618(b)(2) of The Vehicle Code of April 29, 1959.

A traffic light must be obeyed. If it is disregarded it may cause serious injury or damage. Appellant's contention that he went through the light to avoid a possible accident does not give him the right to do so.

An operator of a vehicle must at all times be aware of the fact that a traffic light controlling an intersection through which he intends to pass may change from green before he has reached the intersection. It is his duty at all times to operate his vehicle with this awareness and be prepared to stop with safety to himself and others. In Wilt's case there were four lanes, two in one direction and two in the opposite direction. The tractor-trailer following Wilt could either have stopped in the same lane Wilt was using or have moved into the adjoining lane. There is no evidence before us that the operator of the tractor-trailer following Wilt was unable to stop for the light.

We recognize the economic hardship imposed upon Wilt by this suspension. He has a wife and daughter who are dependent upon his earnings. Economic hardship standing alone is insufficient to excuse such a violation and prohibit such a suspension: Commonwealth v. Emerick, 373 Pa. 388, 400, 96 A. 2d 370, 376.

Appellant's six prior convictions accompanied by two prior suspensions within the last three years would indicate that he has not been as observant of the rules of the road as is required if we are to reduce the appalling number of highway accidents plaguing this generation.

For the above reasons, we make the following

### Decree

Now, March 5, 1960, for the reasons given in the foregoing opinion, the within appeal is hereby dismissed at the cost of appellant.

Exception is noted to R. Lee Ziegler, counsel for appellant.